**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50434-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOHN T. TYLER, | |
| Appellant. | |

BJORGEN, J. — John Tyler appeals from the sentence imposed following a resentencing hearing, asserting that the sentencing court erred by (1) including his juvenile convictions in the calculation of his offender score, (2) imposing a sentencing condition prohibiting him from entering into a romantic relationship with a person who has minor children without prior approval, and (3) imposing a sentencing condition prohibiting him from viewing or possessing sexually explicit material without prior approval. In his statement of additional grounds for review (SAG), Tyler argues that the sentencing court violated his Sixth Amendment right by imposing an exceptional sentence absent a jury finding that aggravating circumstances justified such exceptional sentence. The State concedes that the sentencing court erred by including Tyler's juvenile convictions to calculate his offender score and that the condition prohibiting certain romantic relationships is unconstitutionally vague.

We accept the State's concessions and hold that the sentencing court erred in calculating Tyler's offender score and that the condition prohibiting romantic relationships as written is unconstitutionally vague. We also hold that Tyler's challenge to the condition regarding sexually explicit material and his SAG claim fail. We therefore reverse Tyler's sentence and remand for resentencing.

FACTS

Tyler was convicted of 11 counts of first degree child rape, 2 counts of first degree child molestation, and 2 counts of second degree child rape, committed between 1992 and 2002. In our opinion following Tyler's direct appeal, we affirmed his convictions but remanded for resentencing, holding that the State failed to present sufficient evidence of Tyler's criminal history and that the sentencing court failed to make the required inquiry into Tyler's ability to pay discretionary legal financial obligations (LFOs). *State v. Tyler*, No. 46426-8-II, slip op at 195 Wn. App. 1006, *review denied*, 186 Wn.2d 1029 (2016) (Wash. Ct. App. July 19, 2016) (unpublished).[1]

Following a June 9, 2017 resentencing hearing, the sentencing court calculated Tyler's offender score at 47, with 42 points based on his current convictions and 5 points based on his prior criminal history. The sentencing court included in its offender score calculation a half point each for Tyler's 1980 juvenile offense of second degree burglary and his 1983 juvenile offense of taking a motor vehicle without permission. The sentencing court imposed an exceptional sentence of 732.5 months based on its finding that "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished under RCW 9.94A.535(2)(c)." Clerk's Papers (CP) at 44, 57.

The sentencing court also imposed the following restrictions as conditions of Tyler's sentence and community custody:

> You shall not view or possess sexually explicit material as defined in RCW 9.68.130(2) without prior approval of DOC [Department of Corrections] and your sexual deviancy treatment provider.
>
> . . . .

---

[1] Http://www.courts.wa.gov/opinions/pdf/464268.pdf.

You shall not enter into a romantic relationship with another person who has minor children in their care or custody without prior approval of DOC and your sexual deviancy treatment provider.

CP at 56. Tyler appeals his sentence.

## ANALYSIS

### I. INCLUSION OF JUVENILE OFFENSES IN OFFENDER SCORE

Tyler first contends that the sentencing court erred by including his prior juvenile offenses in its calculation of his offender score. The State concedes error. We accept the State's concession and remand for resentencing consistent with this opinion.

We review offender score calculations de novo. *State v. Moeurn*, 170 Wn.2d 169, 172, 240 P.3d 1158 (2010). Generally, a sentencing court is required to sentence an offender under the law in effect when the current offense was committed. RCW 9.94A.345.

Before 1997, the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, generally did not include juvenile offenses in an offender score calculation. *In re Pers. Restraint of Jones*, 121 Wn. App. 859, 862-63, 88 P.3d 424 (2004). In 2002, the legislature amended the SRA to include juvenile offenses in an offender score even if they had not been counted as part of a previously imposed sentence. *Jones*, 121 Wn. App. at 868 (citing LAWS OF 2002, ch. 107 § 1). In *Jones*, we summarized the effect of these amendments on the inclusion of juvenile offenses in offender score calculations as follows:

> 1. If the current adult offense occurred on or after June 13, 2002, the prior juvenile adjudication counts.
>
> 2. If the current adult offense occurred before July 1, 1997, and the prior juvenile offense is *not* a sex offense, serious violent offense, or Class A felony committed while 15 or older, the prior juvenile adjudication does not count.
>
> 3. If the current adult offense occurred on or after July 1, 1997 but before June 13, 2002, and the prior juvenile offense is *not* a sex offense, serious violent offense, or Class A felony committed while 15 or older:

a. The prior juvenile adjudication does not count if the defendant committed the underlying juvenile offense before age 15, provided that he or she attained age 15 before July 1, 1997.

b. The prior juvenile adjudication does not count if the defendant committed the underlying juvenile offense while age 15 or older, provided that he or she attained age 23 before July 1, 1997.

c. Otherwise, the prior juvenile adjudication counts.

121 Wn. App. at 870-71 (footnotes omitted).

Tyler committed all of his current offenses before June 13, 2002. Therefore, the first *Jones* rule does not apply, and the question of whether Tyler's prior juvenile offenses should have been counted toward his offender score depends on other factors.

Tyler committed 3 of his 15 current offenses (counts 1-3) before July 1, 1997. Because Tyler's prior juvenile offenses of second degree burglary and taking a motor vehicle without permission were not sex offenses, serious violent offenses, or class A felonies, the prior juvenile offenses should not have been counted in his offender score as to those 3 current convictions under the second *Jones* rule. *See* former RCW 9A.52.030(2) (1989) (classifying second degree burglary as a class B felony); former RCW 9A.56.070(2) (1975) (classifying taking a motor vehicle without permission as a class C felony).

Tyler committed 3 of his 15 current offenses (counts 10, 14-15) between July 1, 1997 and June 13, 2002. Therefore, under the third *Jones* rule, we look to Tyler's age at the time he committed his offenses to determine whether his prior juvenile offenses should have been included in his offender score calculation.[2]

---

[2] As addressed above, Tyler's juvenile offenses of second degree burglary and taking a motor vehicle without permission were not sex offenses, serious violent offenses, or class A felonies.

Tyler was born in September 1966. He committed his juvenile offense of second degree burglary in December 1980, when he was 14 years old. Because Tyler committed second degree burglary before age 15, and because he attained the age of 15 before July 1, 1997, the juvenile offense should not have been included in his offender score as to these 3 current convictions. *Jones*, 121 Wn. App. at 870-71.

Tyler committed his juvenile offense of taking a motor vehicle without permission in March 1983, when he was 16 years old. Because Tyler committed taking a motor vehicle without permission after the age of 15, and because he attained the age of 23 before July 1, 1997, the juvenile offense should not have been included in his offender score as to these 3 current convictions. *Jones*, 121 Wn. App. at 870-71.

Tyler committed his remaining 9 of 15 current offenses (counts 4, 6, 8, 11, 16-20) during a time span beginning before July 1, 1997 and ending before June 13, 2002. Tyler's jury verdicts as to these counts are ambiguous as to whether he committed some or all of the current offenses before July 1, 1997, in which case the second *Jones* rule would apply to prohibit inclusion of his juvenile offenses in his offender score calculation, or between July 1, 1997 and June 13, 2002, in which case the third *Jones* rule would apply to prohibit inclusion of his juvenile offenses in his offender score calculation. Because the result is the same regardless of our interpretation of the ambiguous jury verdicts, we need not apply the rule of lenity to conclude that the sentencing court erred by including Tyler's juvenile offenses in its offender score calculation. *See State v. Kier*, 164 Wn.2d 798, 811, 194 P.3d 212 (2008) (Ambiguities in a jury verdict must be resolved in favor of the defendant under the rule of lenity.).

Accordingly, we accept the State's concession that the sentencing court erred by including Tyler's juvenile offenses in its offender score calculation as to all of his current convictions, and we remand for resentencing using Tyler's correct offender score.[3]

## II. CONDITIONS OF SENTENCE AND COMMUNITY CUSTODY

A. Condition Prohibiting Certain Romantic Relationships

Next, Tyler contends that the sentencing condition prohibiting certain romantic relationships is unconstitutionally vague. The State concedes that this sentencing condition is unconstitutionally vague. We accept the State's concession and hold that the condition is unconstitutionally vague in its current form.

Due process under the Fourteenth Amendment of the United States Constitution and article I, section 3 of the Washington Constitution requires that sentencing conditions provide "fair warning of proscribed conduct." *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A sentencing condition is unconstitutionally vague if it "'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'" or if it "'does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

Here, the challenged sentencing condition states, "You shall not enter into a romantic relationship with another person who has minor children in their care or custody without prior approval of DOC and your sexual deviancy treatment provider." CP at 56. In *United States v. Reeves*, the Second Circuit of the United States Court of Appeals held that a condition requiring

---

[3] Although we remand for resentencing on this basis, we address Tyler's remaining contentions because the issues will likely arise again in resentencing.

the offender to notify the probation department "when he establishes a significant romantic relationship" was unduly vague, reasoning:

> We easily conclude that people of common intelligence (or, for that matter, of high intelligence) would find it impossible to agree on the proper application of a release condition triggered by entry into a "significant romantic relationship." What makes a relationship "romantic," let alone "significant" in its romantic depth, can be the subject of endless debate that varies across generations, regions, and genders. For some, it would involve the exchange of gifts such as flowers or chocolates; for others, it would depend on acts of physical intimacy; and for still others, all of these elements could be present yet the relationship, without a promise of exclusivity, would not be "significant." The history of romance is replete with precisely these blurred lines and misunderstandings. *See, e.g.*, Wolfgang Amadeus Mozart, *The Marriage of Figaro* (1786); Jane Austin, *Mansfield Park* (Thomas Egerton, 1814); *When Harry Met Sally* (Columbia Pictures 1989); *He's Just Not That Into You* (Flower Films 2009).

591 F.3d 77, 80-81 (2d Cir. 2010).

We find this reasoning to be persuasive. Even absent the "significant" qualifier, the term "romantic relationship" lacks sufficient definiteness such that an ordinary person would understand what conduct is proscribed. Thus, the condition as written also permits arbitrary enforcement by granting corrections officers broad discretion to determine when an offender's relationship has crossed the prohibited threshold of becoming "romantic" in nature. Because the sentencing condition as written impermissibly lacks sufficient definiteness and fails to protect against arbitrary enforcement, we accept the State's concession that it is unconstitutionally vague in its current form.

B.     <u>Condition Prohibiting the Viewing or Possession of Sexually Explicit Material</u>

Next, Tyler contends that the sentencing court lacked statutory authority to impose the condition prohibiting his viewing or possession of sexually explicit material because the prohibition is not related to the circumstances of his crimes of conviction.

7

A sentencing court has statutory authority to order an offender to "[c]omply with any crime-related prohibitions." RCW 9.94A.703(3)(f); *see also* RCW 9.94A.505(9). A prohibition is "crime-related" if it "directly relates to the circumstances of the crime for which the offender has been convicted." Former RCW 9.94A.030(10). We review the imposition of crime-related prohibitions for an abuse of discretion. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Regarding the abuse of discretion standard as applied to the imposition of crime-related sentencing conditions, our Supreme Court recently noted:

> While it is true the prohibited conduct must directly relate to the circumstances of the crime, "[t]his court reviews sentencing conditions for abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Such conditions are usually upheld if reasonably crime related. *Id.* at 36-37, 846 P.2d 1365." *State v. Warren*, 165 Wash.2d 17, 32, 195 P.3d 940 (2008). A court does not abuse its discretion if a "reasonable relationship" between the crime of conviction and the community custody condition exists. *State v. Irwin*, 191 Wash. App. 644, 658-59, 364 P.3d 830 (2015). The prohibited conduct need not be identical to the crime of conviction, but there must be "some basis for the connection." *Id.* at 657, 364 P.3d 830.

*State v. Nguyen*,___ Wn.2d ___, 425 P.3d 847, 853 (2018). In applying this standard, the *Nguyen* court held that a condition prohibiting an offender from possessing or viewing sexually explicit material was reasonably related to his crime of child rape and molestation, reasoning:

> Nguyen committed sex crimes and, in doing so, established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials," the only purpose of which is to invoke sexual stimulation.

425 P.3d at 854.

Here, as in *Nguyen*, Tyler was convicted of sex crimes, which convictions demonstrated his inability to control his sexual urges. Accordingly, under *Nguyen*, the trial court did not abuse

its discretion in prohibiting Tyler from viewing or possessing sexually explicit material as a condition of his sentence.

## III. SAG

In his SAG, Tyler argues that the resentencing court violated his Sixth Amendment jury trial right by imposing an exceptional sentence absent a jury finding that aggravating circumstances justified such exceptional sentence. We disagree.

Our Supreme Court has already considered and rejected this argument. *State v. Alvarado*, 164 Wn.2d 556, 566-67, 192 P.3d 345 (2008). Here, as in *Alvarado*, the trial court imposed an exceptional sentence under RCW 9.94A.535(2)(c).[4]

> [T]he only factors the trial court relies upon in imposing an exceptional sentence under RCW 9.94A.535(2)(c) are based on criminal history and the jury's verdict on the current convictions[,] . . . [which b]oth fall under the *Blakely*[5] prior convictions exception, as no judicial fact finding is involved.

*Alvarado*, 164 Wn.2d at 566-67 (citation omitted). Because the sentencing court did not engage in impermissible fact finding when it imposed an exceptional sentence based on Tyler's high offender score, Tyler's Sixth Amendment claim fails.

## CONCLUSION

We hold that the sentencing court erred by including Tyler's juvenile offenses in its offender score calculation and that the condition prohibiting certain romantic relationships is unconstitutionally vague in its current form. We also uphold the condition restricting his

---

[4] RCW 9.94A.535(2)(c) provides:
> The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under the following circumstances:
> . . . .
> (c) The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished.

[5] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

viewing and possession of sexually explicit materials. Finally, we hold that Tyler has failed to demonstrate a violation of his Sixth Amendment jury trial right based on the sentencing court's imposition of an exceptional sentence. Accordingly, we reverse Tyler's sentence and remand for resentencing that is consistent with this opinion

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Maxa, C.J.

Lee, A.C.J.